John Shaeffer (SBN 138331)
jshaeffer@foxrothschild.com
Meeghan H. Tirtasaputra (SBN 325572)
mtirtasaputra@foxrothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:   310-598-4150
Facsimile:    310-556-9828

Attorneys for Defendants
ARNI THOR AND SHIREEN THOR

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGHTIES, INC., a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ARNI THOR, an individual; SHIREEN THOR, an individual; and DOES 1-20, inclusive,<br><br>Defendants. | Case No.:  3:24-CV-00465-CAB-BLM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:     June 5, 2024<br>Room:    12B<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT (L.R. 4(B))** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Opposition fails just as much as its Complaint does: completely. Plaintiff does not and cannot expand further on its purported trade secrets because there are none, and it further cannot elaborate on the misappropriation of the same because even if there were trade secrets to be misappropriated, Plaintiff has no actual knowledge that any were in fact misappropriated. While pleading standards are not as heightened as those for dispositive motions, they still require sufficient particularity such that the defendant can understand the particular conduct being complained of and put up a defense. Plaintiff has not done that here with the Complaint. Because the facts supporting the misappropriation act as the foundation for the rest of Plaintiff's claims, Plaintiff's second, third, and fourth claims for relief fail.

As a whole, the Complaint lacks any kind of specificity to put Defendants on notice of the allegedly wrongful conduct they partook in such that they can form a legitimate defense to the same. For these reasons and the further reasons set forth below, the Complaint must be dismissed without leave to amend and with prejudice.

## II. RELEVANT ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges in its Complaint that Defendants misappropriated its trade secrets, identifying such trade secrets only as (a) tech packs for production of Plaintiff's products; (b) computer-aided design files for Plaintiff's products; (c) product development roadmaps and timelines; (d) budgeting, valuation, and other financial documentation and projections; and (e) branding and marketing development plans, analysis and research. Compl., ¶ 24. The Complaint alleges that, upon their departure from Plaintiff in early 2023, Defendants were instructed by Plaintiff to discontinue use of the Google Drive. Compl., ¶¶ 18, 28. The Complaint further alleges that despite this instruction, Defendant Arni Thor maintained access to the Google Drive. Compl., ¶ 29. Access alone, however, is not misappropriation.

///

Almost a year after Plaintiff ended its relationship with Defendants, sometime in February 2024, *The Coronado Times* published an article featuring Defendants. Compl., ¶¶ 30-31. The article included images of a contemplated product design by Defendants and their new company, which the Complaint alleges to be "knock offs" of Plaintiff's products. Compl., ¶¶ 34, 35. The Complaint alleges that one of Plaintiff's designers "confirmed" that Defendants' products in the aforementioned article looked "almost identical to earlier iterations of [Plaintiff's] products." Compl., ¶ 33.

The Complaint further alleges that Defendants, after leaving Plaintiff, took actions "to disrupt [Plaintiff's] relationships with the company's key partners and vendors." Compl., ¶ 37. Such conduct allegedly included contacting **one** of Plaintiff's partners (though only identified in the Complaint as "Partner A") in an attempt to sever Plaintiff's relationship with said partner. Compl., ¶ 38. While the Complaint does not plead a specific contract between Plaintiff and Partner A, Plaintiff admits in the Complaint that it was ultimately able to stabilize its relationship with Partner A. Compl., ¶ 39. The Complaint alleges that Defendants reached out to another of Plaintiff's partners, "Partner B," though the Complaint does not allege a specific contractual relationship between Plaintiff and Partner B nor does the Complaint allege any damaging consequence of Defendants' alleged interaction with Partner B. *See* Compl., ¶ 40. The Complaint also alleges that various other vendors discontinued their relationship with Plaintiff as a result of Defendants' conduct, though what specific conduct and what specific vendors Plaintiff is referencing to is not pled in the Complaint. *See* Compl., ¶ 41.

///
///
///
///
///
///

## III. ARGUMENT

### A. Plaintiff Still Fails to Demonstrate Sufficient Particularity Identifying Trade Secret and Subsequent Misappropriation

#### 1. Plaintiff's Sweeping Categories Are Not Sufficiently Detailed to Put Defendants on Notice of Plaintiff's Purported Trade Secret

"'Before a defendant is compelled to respond to a complaint upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C-08-02658 RMW, 2010 WL 2228936, at *13 (N.D. Cal. June 1, 2010) (citing *Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244, 253 (Ct. App. 1968)). A plaintiff alleging trade secret misappropriation need not "spell out the details of the trade secret" but must identify the trade secret with sufficient particularity to give defendants "reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." *Diodes*, 260 Cal.App.2d at 252-53. An averment simply that the plaintiff has a "secret process" is a bare legal conclusion. *Id.* at 252.

Plaintiff's interpretation of the authority in Defendants' motion is curious and selective. Plaintiff argues that the opinion in *Green Crush, LLC v. Paradise Splash I, Inc.* does not apply here because it presents the legal standard on summary judgment. However, Plaintiff selectively overlooks the court's express note that the plaintiff's "failure to identify specific protectable trade secrets . . . first became apparent on the pleadings." No. SACV 17-01856-CJC(JDEx), 2019 WL 8640654, at *7-8 (C.D. Cal. Nov. 25, 2019). The court further noted the history of the complaint, providing that it dismissed the plaintiff's complaint and first amended complaint "for describing the trade secrets using general labels such as 'processes and systems' and 'marketing

DEFENDANTS' REPLY ISO MOTION TO DISMISS
158967719.1

3

CASE NO. 3:24-CV-00465-CAB-BLM

plans.'" *Id.* at *8. The court provided that the plaintiff's second amended complaint fared no better when it offered "vaguely defined categories of possible trade secrets, including [the plaintiff's] 'business model, business plans, processes and systems.'" *Id.*

Plaintiff further argues that the opinion in *Unified Grocers, Inc. v. VM Int'l, Inc.* supports Plaintiff in that a complaint need not "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." No. EDCV 19-2365-MWF (SHKx), 2020 WL 5370621, at *3 (C.D. Cal. Apr. 8, 2020). Defendants do not argue this is the standard. However, Defendants contend that Plaintiff does not meet even this standard, and Plaintiff does not describe in its opposition how it does – Plaintiff simply and conclusively avers that it has met this standard without further explanation (*see* Opp. at 11:22). In fact, *Unified Grocers* does **not** support Plaintiff in that the court provides that a complaint cannot have "broad categories of information," which are too vague and "not sufficient to identify the trade secrets at issue."

Here, Plaintiff's Complaint presents such broad categories, *i.e.*, "technology packages . . . for Tighties' products, which include all information necessary to produce the products, including but not limited to precise measurements, exact composition of all materials (BOM information), construction details and instructions, and design sketches"; "product development roadmaps and timelines"; "computer-aided design (CAD) files for Tighties' products"; "branding and marketing development plans, analysis and research." Compl., ¶ 24. There is nothing specific about these descriptions. Neither Defendants nor the Court are on notice about what is inside the CAD files, the substance of the "analysis and research," or the "composition" of various materials. In fact, Plaintiff does not even specify the product or products that the information in the Google Drive allegedly holds. The Complaint broadly says that the Google Drive contains information related to "Tighties' products."

///

Plaintiff further alleges the trade secret information includes the process of how Plaintiff's products are made but does not specify the process. "If the subject matter of the claimed trade secret is a manufacturing process, the plaintiff must not only identify the end product manufactured, but also supply sufficient data concerning the process . . . to give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." *Diodes*, 260 Cal. App. 2d at 253. Plaintiff has failed to give any description of the manufacturing process to meet this standard as the Complaint merely and vaguely states that the Google Drive holds "all information necessary to produce the products, including but not limited to precise measurements, exact composition of all materials (BOM information), construction details and instructions, and design sketches." Compl., ¶ 24. Moreover, Plaintiff alleges in its Complaint that its designer indicated that an image in *The Coronado Times* article "appear[s] to be almost identical to ***earlier iterations*** of Tighties' products." Compl., ¶ 33 (emphasis added). However, Plaintiff does not allege how "earlier iterations" of Plaintiff's products have any value – an essential element of the definition of a trade secret – nor does Plaintiff specify what "products" it refers to.

For the foregoing reasons, Plaintiff's first claim for relief for trade secret misappropriation must be dismissed with prejudice.

### 2. Plaintiff's Allegations of Misappropriation Are Conclusory and Insufficient to State a Claim for the Same

Defendants contend that because Plaintiff has failed to identify a trade secret, there is no misappropriation and the entire first claim for relief for misappropriation of trade secrets, fails. However, to the extent the Court finds Plaintiff sufficiently alleged a trade secret, Plaintiff still fails to allege in the Complaint how Defendants misappropriated it, even if Plaintiff now makes a strained attempt to do so in its Opposition.

The Complaint specifically alleges that one of Plaintiff's designers, after seeing

the article and pictures of Defendants' new product in *The Coronado Times*, confirmed that the products depicted therein "appear to be almost identical to earlier iterations of Tighties' products, which the Thors would have been able to create from the Tech Packs taken from the Google Drive that [Defendants] misappropriated." Compl., ¶ 33. The Complaint alleges that Defendants had *access* to a Google Drive that included the "Tech Packs," but it does not allege that Defendants misappropriated the Tech Packs by actually utilizing the contents therein to make a competing product. The Complaint instead speculates that a misappropriation might have occurred because an article of clothing featured in a magazine article looks similar to Plaintiff's product, at least according to one of Plaintiff's designers. The allegation lacks how the misappropriation occurred or what specifically was misappropriated, and Plaintiff relies solely on its conclusory allegations in paragraphs 48 and 49, which contain mere "threadbare recitals" of the elements of a misappropriation cause of action. *See MACOM Tech. Sols. Inc. v. Litrinium, Inc.*, No. SACV 19-220 JVS (JDEx), 2019 WL 4282906, at *3, 9 (C.D. Cal. June 3, 2019) (granting motion to dismiss because the operative complaint was "insufficiently vague and conclusory to support Plaintiffs' claims for trade secret misappropriation" and relied on "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" which do not suffice, and further holding that the operative complaint failed to "allege how the misappropriation occurred, when it occurred, and what was misappropriated by Defendants." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

To the extent that Plaintiff alleges Defendants' mere possession of Plaintiff's trade secret is misappropriation, the misappropriation claim also fails. "Alleging mere possession of trade secrets is not enough." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012) (citing *S. Cal. Inst. of Law v. TCS Educ. Sys.*, No. CV 10–8026 PSG (AJWx), 2011 WL 1296602, at *7 (C.D.Cal. Apr. 5, 2011)).

For the foregoing reasons, Plaintiff's first claim for relief for trade secret misappropriation must be dismissed with prejudice.

### B. Plaintiff's Interference Claims Lack Any Specificity

#### 1. <u>Plaintiff Fails to Allege a Contractual Relationship That Defendants Allegedly Interfered With</u>

To plead a claim for intentional interference with contractual relations adequately, a plaintiff must identify the third party or parties with whom it contracted, and the nature and extent of its relationship with that party or parties." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015).

The Complaint merely alleges that Plaintiff has a "partner . . . who manufactures a piece of equipment integral to Tighties' products." Compl., ¶ 38. The Complaint does not allege that Plaintiff has a **contractual relationship** with this "Partner A," but instead only alleges that it has a non-descript "relationship" with Partner A. *Id.*; *compare with In re Centerstone Diamonds, Inc.*, No. 2:09–bk–23945–PC, 2014 WL 1330186, at *6 (Bankr.C.D.Cal. Apr. 2, 2014) ("In pleading his Third Claim for Relief, Leslie simply recites in the Complaint the elements of a cause of action for intentional interference with contractual relations with little supporting facts. Leslie does not allege facts identifying a specific contract, the parties thereto, or the substance and date thereof."). Neither Defendants nor the Court can infer or assume from these allegations that there was an existing business contractual relationship between Plaintiff and Partner A. The Complaint further fails to identify what "piece of equipment" Partner A purportedly manufactures or for which of Plaintiff's "products," if it manufactures anything for Plaintiff at all, which the Complaint also fails to allege. *Id.* This lack of specificity narrows down the identity of Partner A to be *any* of Plaintiff's manufacturers, and it is unreasonable to expect for Defendants or the Court to know which one of those manufacturers Plaintiff is referring to.

Plaintiff fails to allege the same with regard to Partner B, which the Complaint merely identifies as a "Tighties partner." Compl., ¶ 40. It is unclear whether this Partner B is a designer and, if so, what Partner B designs and for which of Plaintiff's products. This lack of specificity again leaves a lot to the imagination, especially considering that

many of Plaintiff's now business partners were first Defendants' business partners and even friends. Most importantly, Plaintiff again fails to allege a contractual relationship with Partner B.

For the foregoing reasons, Plaintiff's second claim for relief for intentional interference with contractual relations must be dismissed with prejudice.

### 2. Intentional Interference with Economic Advantage

For the same reasons Plaintiff's second claim for relief for intentional interference with contractual relations fail, so does Plaintiff's third claim for relief for intentional interference with economic advantage. The Complaint broadly alleges that Defendants disrupted relationships "between Plaintiff and certain of Plaintiff's partners and vendors." Compl., ¶¶ 63-67. While Plaintiff incorporates its allegations about Partner A and Partner B, these allegations are insufficient as already described above.

Further, because Plaintiff's claim for trade secret misappropriation fails, and because this claim rests on the facts supporting the same, this claim fails. Plaintiff attempts a Hail Mary by arguing that this claim is still viable on the allegation that Ms. Thor made "disparaging and defamatory" statements to Partner B, but the Complaint does not allege that any such statement made by Ms. Thor was untrue or otherwise defamatory or disparaging to Plaintiff. Compl., ¶ 40. The Complaint merely alleges that Ms. Thor made an "improper impli[cation]" of the same. *Id.* Thus, even if this claim rests on this allegedly wrongful conduct, it still fails.

To the extent the Court determines the aforementioned bases do not sufficiently eliminate this claim, Defendants maintain that this claim is preempted by the DTSA claim because this claim relies on the same set of facts upon which the DTSA claim relies. Defendants further maintain that *Deerpoint Group, Inc. v. Agrigenix, LLC* is applicable here in this context. It is not unprecedented for courts to interpret the CUTSA to DTSA claims due to their similarity. *See Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018) (applying California precedent interpreting the CUTSA to DTSA claims because the "elements of a trade

secret misappropriation claim under the DTSA are substantially similar" to the CUTSA). Thus, as the *Deerpoint* court states, "wholesale reliance on a violation of CUTSA necessarily means that the IIPEA and CUTSA misappropriation claims share a common nucleus of operative facts." *Deerpoint*, 345 F. Supp. 3d at 1237. To survive preemption, the claims must "allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim." *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *9 (N.D. Cal. Dec. 11, 2012). As explained above, Plaintiff's Hail Mary to save this claim based on an insufficient allegation of defamation fails, taking away any other possible basis for this claim to rest on other than the very same conduct upon which the misappropriation claim rests.

For the foregoing reasons, Plaintiff's third claim for relief for intentional interference with economic advantage must be dismissed with prejudice.

### C.  Plaintiff's Unfair Competition Claim Fails

Because Plaintiff has failed to allege Defendants misappropriated a trade secret or failed to otherwise sufficiently state the first claim of relief for trade secret misappropriation, which Plaintiff bases its unfair competition claim upon, Plaintiff's fourth claim for relief for unfair competition fails.

## IV. LEAVE TO AMEND SHOULD NOT BE GRANTED

Even in its Opposition, Plaintiff fails to identify the trade secret and how it was misappropriated, toppling the very shaky house of cards that is the Complaint. Plaintiff has demonstrated that it has no actual knowledge of any facts to support its claims. As the Complaint admits, Plaintiff's allegations stem from the article featuring Defendants in *The Coronado Times*, from which one of Plaintiff's designers allegedly "confirmed" – **solely from the images in the article** – that Defendants' products looked "almost identical to earlier iterations of [Plaintiff's] products." Compl., ¶ 33. Thus, Plaintiff cannot amend its Complaint to sufficiently plead any of its claims brought therein with any particularity because it has no *actual* knowledge.

For the foregoing reasons, leave to amend should not be granted.

## V. CONCLUSION

Defendants respectfully request the Court grant this Motion and dismiss the First, Second, Third, and Fourth claims for relief in Plaintiff's Complaint without leave to amend and with prejudice.

Dated: May 29, 2024                FOX ROTHSCHILD LLP

                      By  *s/ Meeghan H. Tirtasaputra*
                          John Shaeffer
                          Meeghan H. Tirtasaputra
                          Attorneys for Defendants, Arni Thor and Shireen Thor